1 | MORGENSTEIN & JUBELIRER LLP
WILLIAM J. CARROLL (CSB #118106)
2 | One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105
3 | Telephone: (415) 901-8700
Facsimile: (415) 901-8701
4 | Email: WJC@mjllp.com

RECEIVED

06 AUG 25 PM 3:36

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

5 | LOWIS & GELLEN
Robert H. Smeltzer (ISB #6208507) (*Pro Hac Vice pending*)
6 | Kevin J. Clancy (ISB #6217109) (*Pro Hac Vice pending*)
200 West Adams Street, Suite 1900
7 | Chicago, IL 60606
Telephone: (312) 364-2500
8 | Facsimile: (312) 364-1003
Email: rsmeltzer@lowis-gellen.com
9 | Email: kclancy@lowis-gellen.com

10 | Attorneys for Plaintiff
HUB INTERNATIONAL OF CALIFORNIA
11 | INSURANCE SERVICES, INC.

12

13 | UNITED STATES DISTRICT COURT

14 | NORTHERN DISTRICT OF CALIFORNIA

15

16 | HUB INTERNATIONAL OF CALIFORNIA
INSURANCE SERVICES, INC., a California
17 | corporation,

Case No.: C-06-5227 MMC

18 | Plaintiff,

[~~PROPOSED~~]

19 | v.

1. **TEMPORARY RESTRAINING
ORDER**

20 | MICHAEL KILZER, an individual, and
CAPAX MANAGEMENT AND
21 | INSURANCE, a California corporation,

2. **ORDER TO SHOW CAUSE RE
PRELIMINARY INJUNCTION**

22 | Defendants.

23

24 | Plaintiff's Application for a Temporary Restraining Order and for and Order to Show

25 | Cause ("OSC") Re Preliminary Injunction came ~~on for hearing~~ before this Court on

26 | _____, August $\underline{30}$, 2006, the Honorable Judge Maxine Chesney presiding.

27 | Having read and considered the pleadings, evidence and other papers submitted by the

28 | *plaintiff*
~~parties, having entertained oral argument on Plaintiff's Application, and being fully advised in the~~

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

03982.00002
628162.1

- 1 -

*based on the existing record*

1   ~~premises~~, the Court hereby makes the following findings of fact and conclusions of law regarding

2   Plaintiff's entitlement to a temporary restraining order and OSC re preliminary injunction.

## FINDINGS OF FACT

4   1.   Hub is an insurance brokerage, and as such identifies and procures suitable

5   insurance products for its commercial clients.

6   2.   Hub hired Defendant Kilzer on or about November 8, 2005, as an insurance

7   "producer" or ~~account executive~~ *sales man*.

8   3.   Hub and Kilzer entered into the Confidentiality and Non-Solicitation

9   Agreement (the "Agreement") on November 8, 2005.

10   4.   Defendant Capax ~~is an insurance brokerage that~~ directly competes with Hub in the

11   retail insurance brokerage market.

12   5.   Hub hired Kilzer in large part to develop clients with whom/which to place

13   commercial worker's compensation insurance.

14   6.   During the eight months in which Kilzer was employed by Hub, Hub provided him

15   with significant resources to enable him to identify, solicit and develop prospective customers,

16   and required him to compile and store information about those prospects for Hub's sole benefit.

17   ~~The pursuit and development of this information was Kilzer's primary job obligation to Hub~~.

18   7.   As part of his Hub duties, Kilzer in fact obtained and/or developed much

19   qualitative, non-public information about the Contractor and Food Prospects referenced in

20   Plaintiff's Verified Complaint, including but not limited to: the name of the prospective client; the

21   names of decision-makers and/or contacts; the types of insurance in which they were interested or

22   required (e.g. commercial auto, commercial liability, property, workers' compensation, etc.); the

23   estimated premium from the prospect, (i.e. how much the proposed insurance would cost the

24   prospective customer); Hub's estimated commission income from the client stated in total dollar

25   terms and as a percentage of premium; the sales stage which the prospect is at (e.g. proposal,

26   verbal commitment, etc.); the expected close date on the business; actual communications

27   between Hub and the prospects; records of sales calls; unique insurance requirements or issues

28

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  faced by the prospect; marketing materials targeted toward particular prospects; and renewal

2  dates. (Collectively, the "Prospect Information").

3    8.    Kilzer maintained this Prospect Information on his Hub-issued laptop computer, as

4  well as in various hard files of documents and notes. The Prospect Information was to be

5  developed and maintained for the exclusive benefit of Hub.

6    9.    The Prospect Information was not generally known to the public or the insurance

7  brokerage industry, nor readily obtainable.

8    10.    Development and compilation of the Prospect Information requires much time,

9  effort and cost, including but not limited to producer salaries, hardware, software, telephone and

10  marketing costs.

11    11.    The Prospect Information is of economic value to Hub and provides it with a

12  commercial advantage over competitors.

13    12.    Hub took reasonable steps to both record and maintain the secrecy of the Prospect

14  Information developed by its producers on Hub's behalf. One of the efforts Hub made to record

15  and secure the Prospect Information was to require producers to enter it into the Pipeline system

16  described in Plaintiff's Verified Complaint.

17    13.    Kilzer did not have authority to access any computer, including his Hub laptop, or

18  the Prospect Information for his own account or that of a competitor. Nor did Kilzer have the

19  authority to delete or tamper with any Hub-related information, data or documents resident

20  thereon.

21    14.    Kilzer did not maintain all of the Prospect Information he obtained or developed

22  for Hub in the Pipeline. He retained some of the Prospect Information on his Hub-issued laptop

23  hard drive and in hard copies of customer files to which only he had access. Kilzer entered no

24  information regarding the Food Prospects in Pipeline, and the information entered about the

25  ~~Roofing~~ *Contractor* Prospects was substantially incomplete in part because Kilzer did not enter any

26  information about any prospect after June 23, 2006, more than five weeks prior to his resignation.

27  The result was that Kilzer kept the only complete and fully developed source of information about

28  the Contractor Prospects or Food Prospects on his Hub-issued laptop and in his hard files.

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

03982.00002
628162.1

- 3 -

15.   Kilzer met with Capax on June 20, 2006.  On June 23, 2006, Kilzer made his last entry concerning the Contractor and/or Food Prospects into the Pipeline system.

16.   ~~Five days later,~~ On Friday, July 28, 2006, Kilzer or someone at his direction deleted the user content files on his Hub-issued laptop, roughly 400 files, relating to the work he had been performing at Hub.  These files contained Prospect Information, among other things.

17.   On that same date, Kilzer or someone at his direction ran a "defragmentation" utility on the laptop.  This maneuver effectively overwrote the deleted files, forever making the data in the deleted files irretrievable.

18.   When Kilzer returned to work the following Monday, July 31, 2006, he accessed the "disk cleanup" and defragmenter utilities on the laptop one more time.  Kilzer also took all of the hard copies of the documents and information regarding the prospects, including actual customer files, out of his Hub office.  He then resigned his Hub employment without any notice, and immediately commenced employment with Capax.

19.   Hub does not currently possess any information about the Food Prospects, nor any information about the Contractor Prospects other than the partial information Kilzer had entered into the Pipeline prior to June 23, 2006.

20.   After discovering the missing files and information, John Arents of Hub demanded that Kilzer return all Hub information in his possession.  Kilzer refused, claiming that the information about the Prospects was his because some of it was obtained by a telemarketer, Dan Martin, whom Kilzer had paid to help him.

21.   The telemarketer was paid for indirectly by Hub, and Hub's name, goodwill and resources were used in identifying and developing the telemarketer prospects.

22.   There is an imminent threat that Kilzer and/or Capax will use the Prospect Information to unfairly compete with Hub.

## CONCLUSIONS OF LAW

1.   The Court has subject matter jurisdiction over the Plaintiff's claim for violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, et seq.  It has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. §1367.

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      2.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(1) and (a)(2), and the

2   Court has personal jurisdiction over the Defendants.

3      3.     Hub has made a *prima facie* showing that Kilzer, by deleting user content files

4   from a Hub computer and running defragmentation utilities to mask that deletion, has violated the

5   CFAA.

6      4.     Hub has made a *prima facie* showing that Kilzer's actions constitute a breach of

7   fiduciary duty owed to Hub.

8      5.     Hub has made a *prima facie* showing that Kilzer's actions and Capax's actions

9   constitute unlawful conversion of Hub's Prospect Information.

10     6.     Hub has made a *prima facie* showing that Kilzer's actions and Capax's actions

11   constitute common law misappropriation of Hub's Prospect Information.

12     7.     Hub has made a *prima facie* showing that Kilzer's actions and Capax's actions

13   constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

14     8.     Hub has made a *prima facie* showing that the Prospect Information constitutes

15   trade secrets under the California Uniform Trade Secrets Act ("UTSA"), ~~that~~ Hub is entitled to

16   ownership and possession of the Prospect Information, and ~~that~~ neither Kilzer nor Capax have any

17   valid interest or right to possess or use that Information. Hub has made a *prima facie* showing

18   that Kilzer and Capax have misappropriated those trade secrets in violation of the UTSA.

19     9.     *Hub has made a prima facie showing that* Kilzer was and is subject to a valid and binding confidentiality and non-solicitation

20   agreement, dated November 8, 2005 between him and Hub, which is attached as Exhibit A to the

21   Verified Complaint in this matter ("the Agreement").

22     10.    Hub has made a *prima facie* showing that Kilzer's action have breached and

23   continue to breach the Agreement.

24     11.    Based on the factual showing made in Hub's Application, the Court concludes that

25   Hub is likely to succeed on the merits of its claims for: violation of the CFAA against Kilzer;

26   breach of fiduciary duty against Kilzer; conversion against Kilzer and Capax; common law

27   misappropriation against Kilzer and Capax; misappropriation of trade secrets against Kilzer and

28   Capax; and breach of contract against Kilzer.

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    12.    Hub has demonstrated both immediate irreparable injury and a significant threat of

2 future irreparable harm should injunctive relief not be granted, including the deprivation of the

3 use and value of its Prospect Information, and other computer data; the competitive advantage

4 Hub would have continued to enjoy had the Prospect Information remained confidential; and the

5 ability to further develop business from the Contractor and Food Prospects unencumbered by

6 Defendant's unfair competition and other violations.

7    13.    The loss of Hub prospects, the loss of the use of the Prospect Information, the loss

8 of Hub's competitive advantage and goodwill, and loss of the ability to fairly develop business

9 from the prospects cannot be reasonably ascertained or compensated by money damages.

10    14.    The Defendants will not suffer cognizable hardship if the Court grants the

11 injunctive relief sought by Hub, because the issuance of an injunction will prevent Defendants

12 only from unfairly competing with Hub, and will require merely compliance with the CFAA,

13 adherence to the Agreement, and preclude Defendants only from taking actions that would be

14 unlawful.

15    15.    Accordingly, the balance of the hardships weighs in favor of granting injunctive

16 relief.

17    Based on the foregoing Findings of Fact and Conclusions of Law, and good cause

18 appearing,

19    IT IS HEREBY ORDERED THAT

20    I.

21    **TEMPORARY RESTRAINING ORDER**

22    A.    For the reasons set forth in the Findings of Fact and the Conclusions of Law

23 above, the Court finds the necessary elements for a temporary restraining order under Rule 65 of

24 the federal Rules of Civil Procedure have been satisfied, and Plaintiff's Application for a

25 Temporary Restraining Order is GRANTED.

26    B.    It is hereby ordered that Defendants Kilzer and Capax, their officers, directors,

27 agents, servants, employees, and all other persons in active concert or participation with them

28 who receive notice of this Order, are hereby:

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(1) prohibited from directly or indirectly soliciting or servicing insurance business

from the Contractor Prospects or the Food Prospects;

(2) ordered to return by ~~August~~ September 8, 2006 at 9:00 a.m. ~~2006~~ all copies, whether in hard or electronic

form, of any portion of the Prospect Information as defined above, and any other

information removed or deleted from Hub's offices or computer equipment, that is in their

possession, custody or control;

(3) prohibited from using or disclosing any portion of the Prospect Information as

defined above, and any other information removed or deleted from Hub's offices or

computer equipment; and

(4) ordered to hold and maintain any commissions received or receivable from

any Contractor Prospect or Food Prospect in constructive trust and not to disburse or use

those funds.

C.     This Temporary restraining Order shall remain in effect until its expiration on

September 11         , 2006 at 5:00 a.m./p.m.

D.     This Order shall become effective immediately and remain effective as indicated

above provided that Plaintiff has posted a bond with the Clerk of the Court in the amount of

$10,000  , for the payment of such costs and damages as may be incurred or suffered by any

party who is found to have been wrongfully enjoined or restrained.

## II.

## ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

A.     Plaintiff's Application for an OSC re Preliminary Injunction is hereby GRANTED.

B.     Defendants are ordered to appear on September 8         , 2006 at 9:00

a.m./~~p.m.~~ in this Court, then and there to show cause why a preliminary injunction should not be

entered against it which would contain the same proscriptions as set forth above in Section I.B.

C.     Plaintiff shall serve and file any further papers supporting its Application for

preliminary injunction on or before August 31         , 2006. Defendants shall serve and file

any papers opposing that Application on or before September 5     at 9:00 a.m. , 2006. Any reply to

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  such opposition shall be filed and served by hand delivery ~~on~~ by _September 6_ at 4:00 p.m., 2006, and a

2  courtesy copy to be delivered to this Court on the same date.

3

4  Dated: August 30, 2006
5  at 5:00 p.m.

Maxine M. Chesney
Judge of the United States District Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

03982.00002
628162.1

- 8 -

Proposed Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction          Case No. C-06-5227 MMC